United States District Court
For the Northern District of California

JAQUAN TARRELL JONES,

    Petitioner,

    v.

TIM VIRGA, Warden,

    Respondent.

No. C 11-5783 SI (PR)

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

**INTRODUCTION**

Petitioner seeks federal habeas relief from his state convictions. For the reasons set forth below, the petition for such relief is DENIED.

**BACKGROUND**

In 2008, petitioner was convicted by a Contra Costa County Superior Court jury of robbery and commercial burglary, consequent to which petitioner was sentenced to 13 years in state prison. Evidence presented at trial demonstrated that in 2006 petitioner and two co-perpetrators stole money and property from a clothing store by holding Josephine Cerda, the store's owner, and Karen Medina, Cerda's niece, at gunpoint. Petitioner was denied relief on

state judicial review.[1]  This federal habeas petition followed.

As grounds for federal habeas relief, petitioner claims that (1) the trial court's failure to *sua sponte* instruct on a lesser-included enhancement deprived him of his right to due process; (2) the affirmance of his conviction on a robbery conviction deprived him of his right to due process; (3) his right to due process was violated because the evidence was insufficient to support a robbery conviction;[2] and (4) defense counsel rendered ineffective assistance.

**STANDARD OF REVIEW**

This Court may entertain a petition for writ of habeas corpus "in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). The petition may not be granted with respect to any claim that was adjudicated on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Williams (Terry) v. Taylor*, 529 U.S. 362, 412–13 (2000). "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. "[A] federal habeas court

---

[1] The state appellate court did modify the judgment to give petitioner an extra day of presentence credit. (Ans., Ex. C-4 at 11.)

[2] This is a consolidation of claims 3 and 4 listed in the Order to Show Cause

2

may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411. A federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was "objectively unreasonable." *Id.* at 409.

## DISCUSSION

**1.   Instruction on Lesser-Included Sentencing Enhancement**

Petitioner claims the trial court violated his right to a jury trial by failing to give *sua sponte* a sentencing enhancement instruction (Cal. Penal Code § 12022(b)(1)), an enhancement which carried a lesser degree of punishment than those sentencing enhancements he received. The state appellate court disposed of this claim on state law grounds.

Petitioner is not entitled to habeas relief on this claim. Simply put, he has not shown that he has a clearly established federal constitutional right to have the jury instructed on a lesser-included sentencing enhancement. It is clear the failure of a state trial court to instruct on lesser-included *offenses* in a non-capital case does not present a federal constitutional claim. *See Solis v. Garcia*, 219 F.3d 922, 929 (9th Cir. 2000).[3]

Under circuit law, however, "the defendant's right to adequate jury instructions on his or her theory of the case might, in some cases, constitute an exception to the general rule." *Id.* at 929 (citation omitted). Petitioner is not entitled to relief under this putative exception. First, circuit precedent does not constitute clearly established federal law under AEDPA. *Renico v. Lett*, 130 S. Ct. 1855, 1865–66 (2010). Second, even if *Solis* applied, it requires that there must must be substantial evidence to warrant petitioner's desired instruction. *See id.* at 929–30. Petitioner has not shown in his petition that his theory of the case constituted an exception to the

---

[3] Although *Solis* speaks only to a petitioner's right to a jury instruction of a criminal offense, if *Solis* holds there is no constitutional right to an instruction on a lesser-included offense, which relates to the substantive elements of a crime, it is reasonable to assume there is also no constitutional right to an instruction on a lesser-included enhancement, which only relates to sentencing.

3

general rule.

### 2. Conviction on a Disclaimed Prosecution Theory

Petitioner claims that the state appellate court affirmed his robbery conviction based on a theory that was rejected by the prosecutor, who, during closing argument, "emphasized repeatedly that petitioner was guilty of stealing the cell phone battery, not the cell phone." (Pet., P. & A. at 9.) Petitioner claims that by affirming on this ground, he was denied fair notice of a new theory of the crime, and thereby due process

Petitioner's claim fails. First, it is reiteration of his claim that the evidence was insufficient to support a robbery conviction, a claim rejected below. Second, there is no legal or factual support for petitioner's claim that he was denied fair notice of a new defense theory. First, the legal authorities petitioner cites — state cases — do not support his contention, nor are they binding on this Court and are here discussed for illustrative purposes only. Those state cases stand for the proposition that "defendants cannot be convicted on a theory neither advanced at trial nor factually determined by the jury." *People v. Moses*, 217 Cal. App. 3d 1245, 1248 (Cal. Ct. App. 1990). In *Moses*,

> The prosecution charged and tried the case on a theory of a larcenous taking and requested instructions only on theft by larceny. We agree with defendant that the record contains no evidence of theft by larceny. On appeal, the People now argue that the heifer became stolen once defendants misappropriated it [by misappropriation, a different crime]. [Footnote removed.] We hold that defendants cannot be convicted on a theory neither advanced at trial nor factually determined by the jury.

*Id. Moses* is inapposite to the issue here. In *Moses*, the state argued on appeal that even if there was no evidence to support the conviction at issue on appeal, viz., theft by larceny, the defendant would be guilty of an entirely different, as well as uncharged and unproved, crime, viz., theft by misappropriation. Here, petitioner was tried for robbery on the theory that he took Medina's cell phone, the same theory the state put forth on appeal. *Moses* is also inapposite because it was the prosecutor in that case who advanced a different theory on appeal, not the appellate court.

4

Second, petitioner's description of the factual record does not withstand scrutiny. Petitioner ignores the prosecutor's larger argument that petitioner took the entire cell phone from Medina, while for a time he focused on the missing battery as further evidence of robbery. (Ans., Ex. B4, Vol. 4 at 534–37.) The prosecution did not abandon or disclaim a theory. The state appellate court, then, did not commit any due process error. Accordingly, petitioner's claim is DENIED.

**3.    Sufficiency of the Evidence**

At trial, Cerda testified that petitioner, armed with a gun, told Medina to give him her cell phone. (Ans., Ex. C4 at 2.) Medina testified that after the crime, she found her cell phone in the store, which was missing its back portion, including the battery. (*Id.* at 2–3.) Petitioner claims that this record is insufficient to show that he robbed Medina of her phone. He bases his claim on (A) the lack of testimony that he was seen disassembling the telephone or take the battery, and that (B) even if he took the battery, there was no evidence that he intended to permanently deprive Medina of her phone. Petitioner also contends that (C) Medina's testimony was insufficient to show that the battery was in fact missing.

The state appellate court found sufficient evidence of robbery, and rejected petitioner's claim:

> Whether or not [petitioner] took a portion of Medina's cell phone with him when he left the store, there is evidence that he pointed a gun at Cerda and Medina, that he demanded Medina's cell phone, that she gave it to him, and that he took it. At that point, the taking was complete [citations omitted] and the jury could reasonably conclude [petitioner] intended to deprive Medina permanently of the cell phone [citations omitted].

(Ans., Ex. C-4 at 6–7.)

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt. *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992). Nor does a federal habeas court in general question a jury's credibility determinations, which are entitled to near-total deference. *Jackson v. Virginia*, 443

5

U.S. 307, 326 (1979). The federal court determines only whether, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* at 319. Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted. *Id.* at 324. "[T]he only question under *Jackson* is whether that [jury] finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, No. 11-1053, slip op. 7 (U.S. May 29, 2012).

Under California law, robbery is "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." Cal. Penal Code § 211. "Felonious" means a taking with the intent to steal, that is, to deprive the owner of the property taken. *People v. Bacigalupo,* 1 Cal. 4th 103, 126 (Cal. 1991). "The taking element of robbery itself has two necessary elements, gaining possession of the victim's property and asporting or carrying away the loot . . . [F]or purposes of establishing guilt, the asportation requirement is initially satisfied by evidence of slight movement." *People v. Cooper*, 53 Cal. 3d 1158, 1165 (Cal. 1991) (italics omitted). Thus, whether a person "conveyed the [property] one yard or one mile from the presence of his victim is immaterial insofar as the element of asportation is concerned . . . [t]he crime of robbery is complete when the robber unlawfully and by means of force or fear gains possession of the movable property of another in the presence of its lawful custodian and reduces it to his manual possession. His escape with the loot is not necessary to complete the crime." *People v. Clark*, (1945) 70 Cal. App. 2d 132, 133 (Cal. Ct. App. 1945). Moreover, interference with the owner's possession "need be only for an appreciable interval of time, be it ever so short." *People v. Pruitt*, 269 Cal. App. 2d 501, 505–506 (Cal. Ct. App. 1969) (quoting People v. Dukes, 16 Cal. App. 2d. 105 108 (Cal. Ct. App. 1936). For example, the taking of a wallet from the victim, "even though it was promptly handed back, constituted a robbery." *Id.* at 505.

As to contentions (A) and (B), a rational juror could have found that petitioner gained possession of Medina's telephone by demanding it from her while wielding a gun, and then

actually taking hold of it. That he ended up taking only the battery is, as the state appellate court determined, irrelevant. Had he taken the phone and then handed it back to her, a rational trier of fact could have found petitioner guilty of robbery. On this record, the jury's finding was not so insupportable as to fall below the threshold of rationality.

This conclusion also defeats contention (C). Again, it is immaterial whether the battery was in fact missing. A rational juror could have found robbery simply based on the testimony that petitioner demanded and then took possession of the cell phone. Accordingly, petitioner's sufficiency of the evidence claims are DENIED.

## 4.     Assistance of Counsel

Petitioner claims that defense counsel rendered ineffective assistance by failing to request an instruction on the previously-discussed lesser-included enhancement, viz., California Penal Code § 12022(b)(1). Here are the relevant facts. The jury found true allegations that petitioner personally had used a *firearm* within the meaning of California Penal Code § 12022.5(a), and also that, within the meaning of § 12022.53(b), he had used a firearm in the commission of a felony. These findings resulted in the addition of a consecutive 10 years to one sentence. (Ans., Ex. C-4 at 1.)

Section 12022(b)(1) carries the less severe punishment of an additional year, which is acquired by the use of "a deadly or dangerous weapon." Petitioner contends that the jury could have believed that the weapon, which was never found by police, was a BB gun or an "Airsoft" gun, that is, not a firearm, but only a deadly and dangerous weapon. The jury could have based such a decision on evidence given by a defense witness, James Norris, an expert on real and imitation firearms. Norris, after describing basic differences between the two sorts of guns, testified that:

> BB guns generally are not designed to replicate other weapons, although they can look real. The muzzle — or end from which the bullet or projectile comes out — of a BB gun is smaller than that of a real gun. Airsoft guns, on the other hand, are designed to look like real handguns. Most are dark or silver in color. Airsoft guns are supposed to have bright orange or yellow muzzles, but the colored portion can be unclipped or colored to look like a real gun. Norris had seen four or five

> altered Airsoft guns in the course of his work. Airsoft guns are available at stores such as Wal-Mart, Big 5, and specialty retailers, as well as on the internet, including on such sites as eBay and Craigslist. Information on altering Airsoft guns to hide the orange muzzle is available on the internet, as are altered Airsoft guns. There was no waiting period to buy an imitation weapon. Most BB guns cost under 100 dollars, and some cost under 50 dollars. Real guns cost from 300 or 400 dollars to more than 1,000 dollars.

(Ans., Ex. C-4 at 4.) There was also testimony regarding the actual weapon petitioner used. Petitioner's co-perpetrator (and brother-in-law) told a police detective that the gun was "a black and gray 'single shot' gun" which 'might be a .40 caliber automatic weapon.'" (*Id.* at 3.) Cerda testified that "the gun seemed to be made of black metal with brown on it, and had a barrel and hole at the front." (*Id.* at 2.)

The state appellate court rejected petitioner's ineffective assistance claim because he had not shown prejudice:

> Through James Norris, the jury heard extensive testimony about the difference between real and imitation firearms. It learned that a real firearm operates through a primary explosive, which is ignited to force a bullet down the barrel; that this was a combustion process; and that imitation weapons such as BB guns and Airsoft guns used pellets and operated either by spring action, gas or air pressure, or electricity, rather than by combustion. During closing argument, the prosecutor argued that the testimony of [petitioner's] brother showed that the gun was 'a real gun,' and that if it had been a BB gun or an Airsoft gun, he would have said so. She argued at other points that the gun in question was real, and that if it had been fake, it would have had an orange tip unless it had been altered. Defense counsel argued that a real firearm operates by combustion, and that Airsoft guns and BB guns operate by compression and were not real firearms. On this record, we see no possibility that the jury might have believed a BB gun or Airsoft gun was a 'real' gun or that it constituted a firearm for purposes of the enhancement.

(*Id.* at 8.)

Claims of ineffective assistance of counsel are examined under *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on a claim of ineffectiveness of counsel, the petitioner must establish two factors. First, he must establish that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms, id. at 687–68, "not whether it deviated from best practices or most common custom," *Harrington v. Richter*, 131 S. Ct. 770, 788 (2011) (citing *Strickland*, 466 U.S. at 690 ). "A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's

8

representation was within the 'wide range' of reasonable professional assistance." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 689). Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* Where the defendant is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 131 S. Ct. at 792 (citing *Strickland*, 466 U.S. at 693).

Petitioner has shown neither a deficient performance nor prejudice. Simply put, there was no evidence to support even an inference that the gun used was anything other than a firearm. For example, there was no testimony that the barrel was smaller (and therefore maybe a BB gun) or that there was an orange or yellow muzzle (like an Airsoft), or that the gun appeared altered. There was, however, testimony supporting a finding that it was a firearm. Not only had petitioner's brother provided evidence specific to the actual weapon used — as opposed to Norris's descriptions of weapons in general — but there also was the testimony of an eyewitness that it "appeared to be a real gun." On such a record, the jury had no facts on which to find that it was an imitation firearm. As there was no factual support to justify a non-firearms instruction, defense counsel's performance was not deficient, nor can it be plausibly said that his inaction resulted in prejudice. Accordingly, this claim is DENIED.

## CONCLUSION

The state court's denial of petitioner's claims did not result in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Accordingly, the petition is DENIED.

9

A certificate of appealability will not issue. Reasonable jurists would not "find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Petitioner may seek a certificate of appealability from the Court of Appeals.

The Clerk shall enter judgment in favor of respondent and close the file.

**IT IS SO ORDERED**.

DATED: June 14, 2012

SUSAN ILLSTON
United States District Judge